UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ADRIENNE FULLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:21-cv-833-GMB |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social | ) |
| Security | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

On July 25, 2016, Plaintiff Adrienne Fuller filed applications for disability

insurance benefits ("DIB") and Supplemental Security Income ("SSI") with an

amended alleged disability onset date of September 14, 2017.  Fuller's application

for benefits was denied at the initial administrative level.  She then requested a

hearing before an Administrative Law Judge ("ALJ").  The ALJ held a hearing on

February 25, 2019, and denied Fuller's claim.  Fuller appealed the decision, and the

Appeals Council remanded the case on February 27, 2020.  After remand, the ALJ

held a hearing on September 28, 2020, and denied Fuller's application.  Fuller again

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul.  No further action must be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

requested review, which the Appeals Council denied on April 26, 2021.  As a result,

the ALJ's decision became the final decision of the Commissioner of the Social

Security Administration (the "Commissioner") as of April 26, 2021.

Fuller's case is now before the court for review pursuant to 42 U.S.C.

§ 1383(c)(3).  Under 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73,

the parties have consented to the full jurisdiction of a United States Magistrate Judge.

Doc. 12 at 1–2.  Based on a review of the parties' submissions, the relevant law, and

the record as a whole, the court concludes that the decision of the Commissioner is

due to be affirmed.

## I.  STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the

Commissioner's decision "is supported by substantial evidence and based upon

proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

The court will reverse the Commissioner's decision if it is convinced that the

decision was not supported by substantial evidence or that the proper legal standards

were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The

court "may not decide the facts anew, reweigh the evidence, or substitute its

judgment for that of the Commissioner," but rather "must defer to the

Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*,

84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted).

"Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "'if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion.'" *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human*

*Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Fuller bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

(1)   Is the claimant presently unable to engage in substantial gainful activity?
(2)   Are the claimant's impairments severe?
(3)   Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4)   Is the claimant unable to perform her former occupation?

(5)     Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "'An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.  A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III.  RELEVANT FACTUAL BACKGROUND

Fuller was born in 1976 and was 40 years old on her alleged onset date and 44 years old on the date of the ALJ's decision. R. 20, 285.  Her primary complaints relate to her breathing and legs. R. 43.  She testified that she is unbalanced when she walks and her hip locks up if she sits too long. R. 44.  She also testified that it is difficult for her to shop because she must stop multiple times to catch her breath walking from the car to the store. R. 71.

Fuller previously worked as a cashier at a grocery store, a cook at a restaurant, a line worker at a factory, a ticket seller and driver at a traveling carnival, and a

caregiver and house manager at a long-term care facility. R. 290, 365.  She completed high school and some college coursework in a surgical technician program. R. 364.  In her disability report, Fuller alleged she was unable to work due to Chronic Obstructive Pulmonary Disease ("COPD"), severe sleep apnea, restrictive lung disease, severe obesity, anxiety, depression, panic attacks, and cellulitis. R. 362.

The ALJ held hearings in Fuller's case on February 25, 2019 and September 28, 2020. R. 39–59, 62–80.  At the first hearing, Fuller testified that she had been able to work, albeit with difficulty because of her legs, but then she fractured a rib and was not able to return to work. R. 43, 534.  Fuller said that she is supposed to be on oxygen at night with a CPAP machine and she has used a cane for the last two or three years to help with her balance when she walks. R. 44–45.  She has access to a nebulizer but cannot afford the medicine to use the machine, and at one point she had an inhaler. R. 50.  Fuller explained that she has knee problems, her hips lock up if she sits for too long, and her back will spasm if she stands for too long. R. 44.  She did drive to the hearing and admitted that she does her own grocery shopping using a scooter and can wash dishes while sitting down. R. 47–48.

During the hearing, the ALJ received evidence from a Vocational Expert ("VE"), who offered the opinion that Fuller could not do her previous work, but could perform other work at the sedentary level, including jobs as an assembler,

surveillance system monitor, or order clerk. R. 57.  The VE explained that these jobs do not require ambulation and there are thousands of each job available in the national economy. R. 57.

At the second hearing, Fuller testified that she experiences severe daily swelling in her legs and shortness of breath. R. 66, 67.  She also said that she cannot walk long distances without getting out of breath and can only sit or stand for ten to 15 minutes at a time. R. 67, 68.  Fuller takes a medication called Lasix and elevates her legs throughout the day. R. 68, 73.  She reiterated that she does not go anywhere without her cane, must walk backwards down flights of stairs to avoid falling, and must take "wash offs" instead of showers. R. 69.  She sits down to sweep, wash dishes, and cook, and she uses a scooter chair when she shops in stores. R. 70, 72.

Fuller also testified that she cannot maintain concentration long enough to watch a two-hour movie and explained that the most disabling symptom is her inability to walk without stopping to catch her breathe. R. 70, 71.  She confirmed she still cannot afford the medicine to use her prescribed nebulizer machine. R. 73.

Fuller submitted a number of medical records to the ALJ to support her claim of disability, including a Physical Capacities Evaluation from her treating physician, Dr. Ammar Aldaher.  The opinion consists of a series of statements calling for Dr. Aldaher to circle a response, check a box, or fill in a blank. R. 645–46.  As is relevant here, Dr. Aldaher circled the responses indicating that Fuller's "[p]ain is present to

such an extent as to be distracting to adequately performance of daily activities" and

that "physical activity such as walking, standing, sitting, bending, stooping, moving

of extremities, etc." would "[g]reatly increase pain and to such a degree as to cause

distraction from task or total abandonment of task." R. 645.  He checked the box that

she could only carry five pounds occasionally and one pound frequently, circled that

Fuller could sit for one hour and stand or walk for zero hours during an eight-hour

workday, and checked "yes" when asked whether Fuller would have to lie down

during an eight-hour workday in excess of typical work breaks. R. 646.  Dr.

Aldaher's response related to Fuller's need for unscheduled breaks and their duration

is illegible. R. 646.

The form then listed the following activities and asks how often Fuller could

perform them:

- Pushing and pulling movement (arm and/or leg controls)
- Climbing (stairs or ladders) and balancing
- Gross manipulation (grasping, twisting, and handling)
- Fine manipulation (finger dexterity)
- Bending and/or stooping movements
- Reaching (including overhead)
- Operate motor vehicles
- Work with or around hazardous machinery

R. 646.  Dr. Aldaher offered the opinion that Fuller could rarely (meaning 1% to 5%

of an eight-hour workday) perform fine manipulation and operate a motor vehicle,

and she could never do any of the other activities. R. 646.  Dr. Aldaher also stated

8

that Fuller would need an assistive device during the workday and would be limited

to less than sedentary work. R. 646.  Finally, Dr. Aldaher checked a box indicating

that Fuller would miss more than four days per month as a result of her impairments

or expected treatment. R. 646.  When asked to "[s]tate the medical basis for these

restrictions," Dr. Aldaher left this space blank. R. 646.

  The ALJ afforded some weight to Dr. Aldaher's opinions. R. 27.  Specifically,

she noted that Fuller would "reasonably be limited to less than sedentary work and

would need a cane due to her morbid obesity and attendant conditions, including

COPD." R. 27.  But she discredited his other opinions, "such as missing more than

four days of work per month, that are not supported by treatment records." R. 27.

The ALJ also gave "some weight to a pain assessment form completed by Dr.

Aldaher" because "[t]reatment records show that the claimant has some pain and is

taking Lasix, but they do not show pain and medication side effects, including

alleged frequent urination, that are so distracting she cannot complete work tasks."

R. 27.

  Applying the sequential evaluation process, the ALJ found that Fuller has not

engaged in substantial gainful activity since her alleged onset date of September 14,

2017. R. 22.  At step two, she found that Fuller suffered from the following severe

impairments: morbid obesity, COPD, sleep apnea, cellulitis, and chronic heart

failure ("CHF"). R. 23.   The ALJ noted that these medically determinable

impairments significantly limit Fuller's ability to perform basic work activities.

R. 23.  At step three, the ALJ found that Fuller did not have an impairment or

combination of impairments meeting or medically equal to the severity of any of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 23–24.

Before proceeding to step four, the ALJ determined that Fuller had the

residual functional capacity ("RFC") to perform sedentary work as defined in 20

C.F.R. § 404.1567(a) with the following limitations:

> Occasionally push and/or pull as well as operate foot controls with the
> bilateral lower extremities; can occasionally climb ramps and stairs;
> can never climb ladders, ropes, or scaffolds; can occasionally balance,
> stoop, kneel, crouch, and crawl; can have occasional exposure to
> temperature extremes, as well as dust, odors, fumes, pulmonary
> irritants, wetness and humidity; can have no exposure to unprotected
> heights, hazardous machinery, or commercial driving; and will require
> a cane for all ambulation.

R. 25.  The ALJ relied on the VE's testimony to find that there are jobs existing in

significant numbers in the national economy that Fuller can perform. R. 28–29.

Thus, at step five of the five-step sequential process, the ALJ found that Fuller was

not disabled within the meaning of the Social Security Act from September 14, 2017,

the amended alleged onset date, through the date of the decision. R. 30.

## IV.  DISCUSSION

On appeal, Fuller makes two arguments.  Fuller first claims that the ALJ erred

in the weight given to the opinions of her treating physician. Doc. 13 at 7.  Fuller's

second argument is that the ALJ did not properly assess her complaints under the

Eleventh Circuit's pain standard. Doc. 13 at 13.  For the following reasons, the court

finds that substantial evidence supports the ALJ's determinations and that the ALJ

applied the proper standards to reach her conclusions.

## A.    Treating Physician Opinion[2]

Fuller first claims that the ALJ did not articulate good cause for discounting

the opinions of her treating physician, Dr. Aldaher. Doc. 13 at 7.  Specifically, Fuller

claims the ALJ erred by assigning "some weight" to Dr. Aldaher's opinions.

Doc. 13 at 10.  The court disagrees.

"In evaluating medical opinions, the ALJ considers many factors, including

the examining relationship, the treatment relationship, whether the opinion is amply

supported, [and] whether the opinion is consistent with the record and the doctor's

specialization." *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010)

(citing 20 C.F.R. §§ 404.1527(d) & 416.927(d)).  A treating physician's opinion

"must be given substantial or considerable weight unless 'good cause' is shown to

the contrary." *Lewis*, 125 F.3d at 1440.  And "'good cause' exists when the:

---

[2] The regulations referenced in this section apply only to disability claims filed before March 27, 2017.  Because Fuller filed her claim in July 2016, the outdated "treating physician" framework applies to her claim.  New regulations prescribing a different framework for evaluating medical opinions govern claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c; *Harner v. Soc. Sec'y Admin., Comm'r*, 38 F.4th 892, 897–98 (11th Cir. June 27, 2022).

(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004). The ALJ must clearly articulate her reasons for rejecting a treating physician's opinion. *Id.* at 1240–41.

Opinions such as whether a claimant is disabled, the assignment of the claimant's RFC, and the application of vocational factors "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner," and on these issues the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court instead looks to the "doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of [that] condition." *Lewis*, 125 F.3d at 1440; *see also* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Such physician statements are relevant to the ALJ's findings, but it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

The court finds here that the ALJ had good cause for assigning some weight to Dr. Aldaher's opinions. The court first notes that Dr. Aldaher's primary opinions consist of a series of questions in response to which he circled responses or filled in

blank spaces with little or no explanation for his answers. R. 646.   Without explanation, these opinions have limited probative value.   Indeed, several courts have criticized "form reports," like this one, where a physician merely checks off a list of symptoms without providing an explanation of the evidence that supports the decision. *See Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding that the use of a "questionnaire" format typifies "brief or conclusory" testimony); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) (finding that the "form report completed by Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions").   The court acknowledges, however, that the decision to use a form report to express medical opinions "is not a basis, in and of itself, [to] discount them as conclusory." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019) (emphasis added).

Second, the ALJ credited many of Dr. Aldaher's opinions in her formulation of Fuller's RFC.  For instance, she found that Fuller could never climb ladders,

ropes, or scaffolds; could not be exposed to unprotected heights, hazardous machinery, or commercial driving; and required a cane for all ambulation. R. 25. And while the RFC did not completely restrict other activities, as Dr. Aldaher recommended, the RFC limited many of those activities to only occasional movement, exposure, or use. R. 25.

As the ALJ explained, she did not give full credit to Dr. Aldaher's opinions because his own treatment notes do not support the substantial limitations detailed in his opinion. The record evidence supports this conclusion. The treatment records consistently reflect normal cardiovascular assessments, clear respiratory findings, and do not document the side effects Fuller claims. R. 746, 748. For example, in September 2017, notes from the Coosa Valley Medical Center reflect cognitive and function statuses of no impairment with motor-major muscle groups function at "5/5" (R. 624), and two weeks later an examination revealed no chest pain, a regular cardiovascular rhythm with no gallop, and a report of grossly clear lungs. R. 607, 610, 766. At a visit with Dr. Aldaher in November 2017, testing showed that Fuller's lungs were clear. R. 762. The treatment records also reflect a consistent pattern of no reported distress and regular heart and lung assessments. Over the span of two years and five separate visits—July 2017, September 2017, December 2017, February 2018, and July 2019—Fuller's physical examination results consistently reflected no acute distress, a regular heart rate with no gallop, and clear

lungs. R. 607, 610, 624, 746, 748, 752, 803.

For these reasons, the court concludes that the ALJ applied the proper standards in evaluating Fuller's medical evidence and did not err in assigning some weight to his opinions.  The ALJ clearly articulated her reasons for finding portions of Dr. Aldaher's opinions to be inconsistent with the medical records and the court finds that substantial evidence supported this decision.[3]

## B.     Pain Standard

Fuller's second claim is that the ALJ did not properly assess her subjective complaints consistent with the Eleventh Circuit pain standard. Doc. 13 at 13.  The Commissioner contends that "the ALJ cited the relevant regulations, considered Plaintiff's subjective complaints in relation to the evidence, and articulated reasons for finding the subjective complaints inconsistent with the record." Doc. 14 at 13 (citations omitted).  The court finds that substantial evidence supports the ALJ's determination and that she applied the proper standards to reach her conclusions.

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote*, 67 F.3d at 1561.  To establish disability based upon pain and other subjective symptoms,

---

[3] Although Dr. Aldaher offered the opinion that Fuller is disabled based on her obesity (R. 603, 605), this is a determination reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see also* Dyer, 395 F.3d at 1210.

"[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer*, 395 F.3d at 1210 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ may discredit the claimant's subjective testimony of pain and other symptoms if she articulates adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Ruling 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit credibility findings, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be incorporated into an ALJ's credibility determination, but a "broad rejection" is "not enough to enable [the district court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ determined that Fuller's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms

but that her statements concerning the intensity, persistence, and limiting effects of

these symptoms were not entirely consistent with the medical evidence and other

evidence in the record. R. 26.

Fuller's contention that the ALJ did not consider the evidence in its entirety

(Doc. 13 at 13–15) is not supported by the record.  The ALJ thoroughly examined

the medical evidence in the record in determining that Fuller's subjective complaints

of pain were not entirely credible, and she adequately articulated the reasons for this

finding. R. 20–24; *see Foote*, 67 F.3d at 1562.  More specifically, the ALJ found that

Fuller's complaints of disabling pain were inconsistent with the following medical

evidence:

- In September and November 2017, Fuller's imaging reports showed no acute chest disease. R. 763, 766.  The imaging in November also revealed that her lungs were grossly clear and that her heart and mediastinal structures appeared stable. R. 762.
- In December 2017, a report from an office visit reflected that Fuller's cardiovascular and respiratory examinations were unremarkable and she was not in acute distress. R. 748.  The doctor assessed that she suffered from obesity, cellulitis of right lower limb, and chronic pulmonary disease. R. 749.
- In February 2018, another report from an office visit reflected that Fuller's respiratory and cardiovascular examinations were normal and she was not in acute distress. R. 746.  On this visit, the doctor's assessment was obesity. R. 747.
- In June 2020, Fuller's respiratory and cardiovascular examinations again were normal. R. 801.  Her assessment reflected heart failure, morbid obesity, chronic obstructive pulmonary disease, and cellulitis of right lower limb. R. 802.

On this record, the court finds that the ALJ's conclusion about Fuller's subjective complaints of pain are supported by substantial evidence.  While Fuller's record does present some abnormalities, it also reflects numerous reports of clear lungs and consistently positive cardiovascular and pulmonary assessments over the span of a few years.  And Fuller consistently reported freedom from acute distress.

The ALJ also noted Fuller's progress over time in finding that she was less limited than she reported.  The ALJ first referenced Fuller's COPD and sleep apnea, which according to treatment records do not "cause debilitating airway obstruction" and can be treated with a CPAP machine. R. 27.  The ALJ next pointed to evidence that Fuller's "cellulitis is recurrent but does not require frequent treatment" and she has had consistently normal cardiovascular examination results for chronic heart failure. R. 27.  Lastly, the ALJ acknowledged that Fuller's "morbid obesity and breathing problems have recently required the use of a cane" and scooter, but she admits she still is able to grocery shop, drive, and clean. R. 47–48.  Furthermore, the ALJ did not completely dismiss Fuller's pain, but accounted for it in limiting her "to sedentary exertion with additional postural and environmental limitations to accommodate her physical impairments and to avoid exacerbating her pain and fatigue." R. 28.

Finally, the record reflects that Fuller engaged in a somewhat normal level of daily activity, including washing dishes, sweeping, cooking, grocery shopping, and

driving. R. 47–48, 70, 72.  Fuller twice testified that she drives herself to various stores to shop and uses a scooter while inside. R. 47, 48, 72.  These activities further undermine her claim of disabling limitations. *See Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019) (holding ALJ properly found subjective complaint inconsistent with a record of simple daily activities).  All of this evidence underscores the ALJ's finding that Fuller's testimony about her symptoms was not entirely consistent with the medical evidence.

Having considered the ALJ's opinion and all the evidence presented, the court finds that the ALJ's decision to give only partial credit to Fuller's allegations of pain was based on substantial evidence and that the ALJ applied the correct legal standards in arriving at her decision.

## V.  CONCLUSION

Upon review of the administrative record, and considering all of Fuller's arguments, the court finds the Commissioner's decision is supported by substantial evidence and based on the proper legal standards.  Accordingly, the decision is due to be affirmed.  A final judgment will be entered separately.

DONE and ORDERED on September 26, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE